At this time, we'll hear Southside Hospital v. New York State Teachers Association. May it please your honors, I am Peter Sturgis. Wait a second because a bunch of people are leaving, so we want to pay attention to you and we'll just wait for the hubbub to die down. Thank you, your honor. Okay, good morning. May it please your honors, my name is Peter Sturgis, I represent Southside Hospital, the appellant in this case. We seek that the award that arose out of a labor arbitration grievance should be vacated because of clear error by the lower court. This is a case in which the focus is upon article three, essentially, of the labor contract, and there are two provisions in that contract. One is 3.01, the other is 3.10. What the lower deciders did here was focus on 3.10 to essentially give the arbitrator, or the arbitrator took upon himself, the functions of the committee that was set up in 3.01 to do the job that he did, and that is- The policy committee that was set up to reach, to hear complaints about what could happen and to make recommendations. There's no sense in here that this committee was a vehicle for specific complaints and that it needed to be exhausted with this committee. At least that was the arbitrator's determination. And if the arbitrator could determine arbitrability, which I think it can be by virtue of the fact that the arbitration rules were incorporated into the arbitration agreement, why isn't that the end of the matter? It isn't the end of the matter because what the arbitrator did was clearly wrong. He just looked the other way and looked in the wrong direction. In fact, 3- For us to decide to second guess the arbitrator? If the arbitrator makes a position? I mean, we don't go around reviewing arbitration. He rewrote the agreement, your honor. What? He rewrote the agreement by nullifying the effect of 3.101. What Southside did here was preserve its authority to make these kinds of decisions that are forwarded to- One of the- You're saying that Southside has the right to preserve its right to force nurses to do non-nursing duties. But as I read the CBA, they don't have to do that, and they have an arbitration right to contest that. That's what the lower court said, but the lower court was wrong because the lower court- I know your view is they're wrong. That's why you're in that seat. Well, I'm going to explain why they're wrong, your honor. What Judge Saber did was overlook the rest of Article 3.01 in subsection B, which sets forth specific functions that the committee is empowered to deal with, so that the hospital can then make decisions about their recommendations. What's important- If you're right, 3.10 doesn't mean anything. 3.10, which is the thing that says nurses don't have to do non-nursing functions, it's meaningless if you're correct, because it's already covered in 3.01. What earthly purpose would 3.10 have if 3.01 means what you say it means? Judge Shea, what its purpose is is to list the kinds of non-nursing functions that 3.01 can deal with as a remedy. That's what 3.10 was designed to do, is indicate that the hospital does indeed recognize that there are non-nursing functions that it should avoid assigning to the nurses, but that's all it does is list those. So what do you do? You go to 3.01 to rectify whatever might be wrong as- If, hypothetically, the nurses had not made a committee recommendation, but simply started a grievance, would the arbitrator have had jurisdiction to decide that grievance? The arbitrator has the power to interpret the labor contract. That's not what I'm asking you, obviously that's true. I'm asking you a different question. If the nurses had not convened their committee and made the proposal with respect to non-nursing duties to the management which rejected it. If instead of doing that, they had just started a grievance and ask an arbitrator to decide it. Would the arbitrator have had jurisdiction to decide it? I would argue no, your honor, because there's a specific provision in the agreement that takes away his authority to decide the grievance if it's focused on non-nursing duties as it was here. But he went ahead and assumed that he did have- There is a provision in the CBA that deals with non-nursing duties. And the nurses have a dispute. They don't agree with management about non-nursing duties. So they go to an arbitrator, which it seems to me they have the right to do, and the arbitrator decides it and issues an arbitral award. You're saying the arbitrator doesn't have the power to issue that arbitral award? I would say he would, but it would be- Only if it favored the hospital. It would be fatal and subject to a petition to vacate if he ignored- Only if it favored the hospital. Your honor, in this case- He had power to do that, but he didn't have power to do it either. Well, your honor, in this case, it's clear that he did not have the authority to do what he did, but he just ignored the dispositive part of 310, parsed it away, and ignored it, as did the lower court, which adopted Magistrate Judge's report in totality. And what Magistrate Brown observed at Appendix 372 is that the arbitrator took upon himself the duties of the committee. Well, that violates the agreement. The agreement is very important to both parties. This issue is critical to both parties. It's hotly contested in the healthcare industry. The hospitals want to keep the power- I have a question. The 3.01 that you're pinning your argument on talks about functions, and it says that the committee's going to analyze factors that facilitate or impede the practice of nursing, and make recommendations with regard to the same, for example. Okay, and then it lists some very broad categories, but those are just illustrations. So in other words, the committee can opine just about on anything that has to do with nursing, it seems to me, which would effectively make, based on your reading, make the arbitration clause a nullity, right? Because as long as it's within the scope of what the committee can make recommendations about, it can't be arbitrated. That's what the other side argues, but I say that this is very discreet and specific, 3.01 is, based upon the list of non-nursing functions set forth in 3.10. The hospital- That's not the only topic in 3.01. The nursing involvement and non-nursing responsibilities is just one example. Well, that's right, but it has to do with assignment of duties to nurses. That's what 3.10 and 3.01 are designed to deal with. Not anything else in the agreement. It wouldn't have anything to do with wages, for example. It wouldn't have anything to do with- It says, for example. They can opine on whatever they want. That's what- Anything to do with nursing, right? No, your honor, just because it exemplifies something, it means that that's what's important. And it is important to the hospital to keep that authority prospectively, to keep the authority to ultimately determine what kind of assignments it's going to make to nurses in terms of their functions. But what happened here was an arbitrator took over that function. So we're going to have to, if that award- If the hospital has sovereign power to decide this, what do they need the committee of nurses for? It sounds to me as though the committee of nurses is designed to make recommendations that if they're satisfactory to management will be adopted. So that people don't have to waste their time and money doing grievances if the parties can get together on it. Your honor, it was a compromise reached by two warring bargaining parties, one of which wanted to keep authority, the other wanted to take it. What the compro- That's when you call in an arbitrator. No, your honor, that's when you call on the committee because the committee is comprised of nursing staff. The hospital wanted to hear- We know what the committee recommended, the hospital rejected it. Not in this case. In this case, the committee never went forward because the union instead ran to the arbitrator first. The union actually admitted that it- Nurses are going to propose that they do non-nursing duties and that they mop the floor? We don't know, but that's what the provision says. We don't go against what the language of the contract says. You've reserved some rebuttal, and we will hear you then, sir. Thank you, your honor. Good morning, your honors. Good morning. Josh Ellison, Cohen, Weiss, and Simon, LLP for the New York State Nurses Association. Your honors, section 3.1.01 of the CBA is a very specific exclusion from the arbitration process. Recommendations of the nursing committee. In fact, it's only the director of nursing's response to those. So this is an advisory committee made up entirely of nurses with management acting as a consultant. And their job is to make a recommendation, management's free to accept or reject. It's not carte blanche to swallow anything else in the contract that happens to touch on any of these other subjects. I would point out that 3.05 in the same section deals with staffing and has its own specific binding arbitration procedure with respect to staffing guidelines. So it can't be the case that the reference to staffing in 3.01b2 means that the committee is the sole authority to deal with staffing. And that an arbitrator has no place in determining a dispute that touches on staffing. Section 3.1, which is the provision that was violated, the arbitrator found, is a command. Nurses should not be required to do non-nursing functions regularly. That's a specific command. That's- There's some play in the joints there, isn't there? I mean, isn't it, it's a professional question as to what would be nursing duties and what would not be nursing duties that could vary from hospital to hospital as well? That's correct. And that would, if the arbitrator would have been within his rights to say, for instance, the word should here means this is advisory and that this is not a binding command. He would have been within his rights to say, Nisna, the duties that you're showing, going to the pharmacy, I actually think those are nursing duties based on the evidence, but he didn't. He's interpreting the contract that the parties agreed to. It says nurses should not be required to regularly, there's all he could have said. I don't think they're regularly required to do that. So that's what arbitrators, that's their function, is to deal with some of the play in the joints, as your honor puts it. And it's not the court's role, respectfully, to be reviewing the substance of the arbitrator's award. So what Southside has come up with is this argument that this was unarbitrary under section 3.01. And I believe if you read the plain language, the only thing that's excluded is a response of management to a recommendation from the committee. That cannot be arbitrated. There was- What kind of stuff does the committee recommend about? Your honor, I frankly do not know. That presumably the examples listed here are the kind of things that they deal with. But I would also add that it makes sense why the parties would agree that this should not be, these recommendations should not be arbitrable, because the committee is completely Nisna. So if Nisna nurses can come up with a recommendation, the administration says no, we're not interested in that, and then they can run to arbitration, grieve the recommendation. Then you have this situation where Nisna is unilaterally essentially able to add to the contract. So it makes sense why this specific- And also it would run counter to the idea that they're making recommendations. They're not making recommendations, they're insisting on something. And then that would have to go to arbitration. I mean, so that runs against the concept of the committee. Correct. I agree, your honor. And that's why this specific process is not arbitrable. But it does not swallow the remainder of the contract. And so unless your honors have further questions, I'll rest on my papers.  We'll hear rebuttal. Thank you, your honor. This notion that 3.01 can resolve any old dispute under the agreement doesn't make any sense because it specifically refers to nursing practices specific to the hospital, of concern to the hospital, including making recommendations with regard to nursing involvement in non-nursing responsibilities, but that is the precise issue before this court. Whether it was proper for the arbitrator to take that on, or whether it was best to be left to the committee hospital process the way it was negotiated. If there were some other issue in front of the arbitrator, other than non-nursing care, one could argue to an arbitrator, look, this isn't arbitrable here because it's not one of the items that relate to this assignment of nursing functions. Now, if the union thinks, and it's speculative, that what it means is that any old law sidestepped on this basis, they can make that argument to an arbitrator. The arbitrator can decide, I would suggest to your honors that, as to what would be included in non-nursing care and what wouldn't be. And I would say that it's awfully hard. Let me give you a hypothetical. The hospital asks the nurses to mop the floors. Their committee says that this is really not right, this is a non-nursing function. The management says, well, no, we don't agree, we think it is. According to you, they don't have any right to grieve it, they don't have any right to seek an arbitrator's view. The management unilaterally decides, based on what it directs nurses to do, and based on what it rejects in the way of recommendations, exactly what the nurses are going to do. That doesn't sound like a CBA to me. First of all, your honor, the CBA is what it is. It doesn't matter how harsh it is on one side or the other. That's what it provides. It theoretically could provide that, but we know- Theoretically could provide that. Yes, it could, but I would recommend that the way it would actually happen here is, the nurses would not be sought to mop the floor, that wouldn't be very smart on the part- It's a non-nursing duty. That's right, but it's a type of non-nursing duty that would never happen. It's very speculative that it would, and if the union doesn't like it, if the unit now is being told to mop the floors, their remedy is to go back to the bargain table and make that impossible for the administration to order. Until then, they mop the floors. That's right, but that's the way the language is, your honor. That's what the parties in compromise bargained for. And they didn't take care of the mopping of the floor problem because they know it never happens. Thank you. Thank you, your honor. Thank you both. We will reserve decision at this time.